UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **NEW ENGLAND SURFACES** )<br>**d/b/a DION DISTRIBUTORS,** )<br>**INC.,** )<br>)<br>    **PLAINTIFF** )<br>)<br>v. )<br>)<br>**E. I. DUPONT DE NEMOURS AND** )<br>**COMPANY d/b/a DUPONT** )<br>**and PARKSITE, INC.,** )<br>)<br>    **DEFENDANTS** ) | **CIVIL NO. 06-89-P-H** |

### DECISION AND ORDER ON DEFENDANT E.I. DUPONT DE NEMOURS AND COMPANY'S MOTION FOR ATTORNEY FEES

If a party does not use Rule 11 or Rule 37 to seek sanctions against its opponent during the course of a lawsuit, can it recover sanctions for litigation misconduct at the close of the case under 28 U.S.C. § 1927 or the court's inherent power? Theoretically yes. But I conclude that if the Rules and statute are "up to the task" of dealing with the alleged abuses (and they are here), the court's inherent power should not be used; and that the movant has not met its burden of proof under § 1927 to show "vexatious" conduct. After oral argument, the defendant DuPont's motion for attorney fees is **DENIED**.

#### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff New England Surfaces ("NES") was a longtime distributor for the defendant E.I. DuPont de Nemours and Company ("DuPont") throughout

New England. In April 2006, DuPont terminated NES as a distributor. Then it appointed the defendant Parksite, Inc. ("Parksite") to be its "Sales Affiliate" in New England. Parksite had previously led a group of nineteen distributors (the "G-19"), including NES, in negotiating with DuPont.

NES sued DuPont and Parksite (collectively the "defendants") on May 3, 2006. The initial Complaint contained fourteen counts. NES added three counts with its First Amended Complaint on May 19, 2006, before the defendants responded to the initial Complaint.[1]

Next, the defendants filed a motion to dismiss all but two counts. NES moved for permission to file a Second Amended Complaint, adding claims for breach of contract and for violation of the Maine Unfair Sales Act. On August 23, 2006, Judge Singal granted the motion to amend. On October 20, 2006, Judge Singal granted in part the defendants' motion to dismiss. Order on Mot. to Dismiss, 460 F. Supp. 2d 153 (D. Me. 2006). He dismissed four counts under various state statutes based primarily on a choice-of-law determination. See id. 158–62. He also dismissed the claim of unconscionability because NES's allegations were insufficient to state such a claim. See id. at 162–63. He denied the motion to dismiss the other counts.[2]

---

[1] The First Amended Complaint eliminated a claim under the Rhode Island Deceptive Trade Practices Act and added claims for aiding and abetting tortious conduct, misappropriation of confidential information, and violation of the Maine Antitrust Statute.

[2] The counts in the Second Amended Complaint that survived the motion to dismiss were: Count I—Violation of Connecticut Franchise Act; Count VI—Fraud and Misrepresentation; Count VII—Negligent Misrepresentation; Counts VIII & IX—Breaches of Fiduciary Duty; Count X—Aiding and Abetting Tortious Conduct; Count XI—Promissory Estoppel; Count XII—Breach of Covenant of Good Faith and Fair Dealing; Count XIII—Tortious Interference with Contractual Rights and Prospective Economic Interests; Count XIV—Breach of Contract; Count XV—
*(continued on next page)*

2

Discovery proceeded until April 2007; then the defendants filed motions for summary judgment on all remaining counts. On September 14, 2007, Judge Singal granted partial summary judgment to the defendants. See Order on Mots. for Summ. J., 517 F. Supp. 2d 466 (D. Me. 2007). He granted them judgment on all of NES's claims related to DuPont's termination of NES as a distributor. But he denied summary judgment on four claims related to the manner in which DuPont and Parksite acquired NES's customer lists or communicated with NES's customers after DuPont had decided to terminate NES, ruling that there were trialworthy issues on those counts.

NES never got to trial on those remaining claims. On December 6, 2007, Judge Singal granted the defendants' motion in limine to exclude NES's evidence of damages because it was not relevant to the remaining claims and because NES failed to establish an adequate foundation for the proffered testimony of its damages experts. See Order on Mot. in Limine, 2007 WL 4287577 (D. Me. Dec. 6, 2007). As a result, Judge Singal entered final judgment against NES. NES filed a notice of appeal to the First Circuit on January 4, 2008.[3]

Then, DuPont filed this motion for attorney fees against NES and its law firm Berman & Simmons and one of its partners, William Robitzek (collectively "Berman & Simmons"), based upon 28 U.S.C. § 1927 and the court's inherent

---

Unreasonable Termination of Distribution Agreements; Count XVII—Misappropriation of Confidential Information; Count XVIII—Violation of Maine Antitrust Statute; Count XIX—Violation of Maine Unfair Sales Act.

[3] The appeal is pending. See United States Court of Appeals for the First Circuit, Docket No. 08-1048.

power.[4]  This is the first time in the lawsuit that DuPont raised any issue of litigation misconduct: throughout the proceedings before Judge Singal, the defendants never filed a motion under Federal Rules 11, 26, 37 or Local Rule 26.

DuPont claims that it has incurred $1,376,215.27 in attorney fees and $398,721.48 in disbursements for its own defense and as a result of indemnifying Parksite for its fees and expenses.  According to DuPont's motion:

> a. [NES] . . . and its attorneys brought and thereafter continued to prosecute this lawsuit without any proper basis for or proper investigation into the factual and legal bases for the numerous counts asserted against DuPont and Parksite . . . and
>
> b. NES and its attorneys made the proceedings unnecessarily complex and expensive by filing two amended complaints containing duplicative and meritless counts, instituted and refused to narrow burdensome document discovery and otherwise conducted the proceedings in a vexatious manner.

Mot. of DuPont for Attorney's Fees, at 1 (Docket Item 219) ("DuPont's Mot. for Att'y Fees").  DuPont makes no charge that NES or its lawyers acted with subjective bad faith.

## ANALYSIS

The "American Rule" is that each party bears its own attorney fees and litigation expenses.  <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 247 (1975).  Narrow exceptions to the American Rule exist under the Federal Rules of Civil Procedure, some statutes, and the court's inherent

---

[4] On March 25, 2008, DuPont withdrew its motion for attorney fees against David J. Perkins and Perkins Olson, P.A.  On April 16, 2008, DuPont withdrew its motion as to Paul F. Macri, another Berman & Simmons partner.

4

power.  DuPont seeks relief under the court's inherent power and under 28 U.S.C. § 1927.

### *(1) Sanctions based upon the Inherent Power of the Court[5]*

Under its inherent power, a federal court may assess attorney fees against a "party [that] has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Alyeska, 421 U.S. at 258–59 (quoting F.D. Rich Co. v. United States for the Use of Indus. Lumber Co., 417 U.S. 116, 129 (1974)); see also Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991).  Subjective bad faith is not a requirement.  Dubois v. U.S. Dep't of Agric., 270 F.3d 77, 80 (1st Cir. 2001) ("the moving party must demonstrate that the losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith'") (quoting Local 285 v. Nonotuck Res. Assocs., 64 F.3d 735, 737 (1st Cir. 1995)).  "Because of its potency, however, a court's inherent power to shift attorney's fees should be used sparingly and reserved for egregious circumstances.  Thus, the power to sanction must be used with great circumspection and restraint, employed only in compelling situations."  Id. (internal quotation marks and citations omitted).

The Supreme Court has instructed that although "a federal court [is not] forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules . . . . the court ordinarily should rely on the Rules rather than the

---

[5] DuPont agrees that the court's inherent power is the only basis for recovery against NES.  Section 1927 can be used only against a lawyer, not a party like NES.  See Bolivar v. Pocklington, 975 F.2d 28, 33 n.13 (1st Cir. 1992).

5

inherent power" unless "neither the statute nor the Rules are up to the task." Chambers, 501 U.S. at 50. The First Circuit has confirmed that "there are limits to a court's inherent powers, particularly in instances where the Civil Rules are on all fours." United States v. One 1987 BMW 325, 985 F.2d 655, 661 (1st Cir. 1993) (specifically concluding that a court should stay within the confines of sanctions allowed by Rule 37 rather than shortcut the "delicate balance struck by [Rule 37]" by imposing a sanction pursuant to its inherent powers).[6]

The Rules alone here are entirely "up to the task." Rule 11 gives abundant protection against a party or lawyer who files any pleading without adequate inquiry or investigation, or to needlessly increase the cost of litigation; or who later advocates a position contained in the pleadings, after learning that it is without merit.[7] As for discovery, Rules 26 and 37 permit a

---

[6] The Advisory Committee Notes to Rule 11 explain: "Chambers cautions . . . against reliance upon inherent powers if appropriate sanctions can be imposed under provisions such as Rule 11, and the procedures specified in Rule 11—notice, opportunity to respond, and findings—should ordinarily be employed when imposing a sanction under the court's inherent powers." Advisory Committee's Notes on 1993 Amendments to Fed. R. Civ. P. 11; see also Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 752 (7th Cir. 2005) ("when a domain of judicial action is covered by an express rule, such as Rules 26 and 37 of the civil rules, the judge will rarely have need or justification for invoking his inherent power"); Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 785 (3d Cir. 2001) ("before utilizing its inherent powers, a district court should consider whether any Rule—or statute-based sanctions are up to the task").

[7] Rule 11 requires attorneys to represent for each pleading: "that to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
  1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
  2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

*(continued on next page)*

6

party to resist abusive discovery, seek a protective order, Fed. R. Civ. P. 26(b)(2)(C) & (c)(1), and seek the award of expenses, Fed. R. Civ. P. 26(c)(3) & 37(a)(5). Moreover, attorney fees are specifically available under Rule 26(g). This District's Local Rule 26(b) also articulates a specific process for resolving discovery disputes quickly and economically. DuPont has not presented any alleged misconduct not adequately addressed by the Rules.[8] I conclude therefore that there is no reason here to exercise the court's inherent power.

### (2) Sanctions based upon 28 U.S.C. § 1927

28 U.S.C. § 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In the First Circuit, the standard for awarding § 1927 sanctions is objective: "while an attorney's bad faith will always justify sanctions under section 1927, we do not require a finding of subjective bad faith as a predicate to the

---

> 3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."

Fed. R. Civ. P. 11(b). The obligations of Rule 11 apply at the time a pleading is initially presented to the court and at any time it is later advocated. See Fed. R. Civ. P. 11(b) & Advisory Committee's Notes on 1993 Amendments to Fed. R. Civ. P. 11 (the Rule now "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable").

[8] Chambers approved use of the court's inherent power to sanction a pervasive course of conduct that included actions specifically sanctionable under the Rules. See 501 U.S. at 50–51. But in Chambers, "much of the bad-faith conduct" fell outside the Rules and the conduct sanctionable under the Rules was intertwined with conduct sanctionable only under the inherent power. See id. Here, the primary thrust of DuPont's motion for attorney fees is the filing and continued pursuit by NES of baseless claims—conduct that falls squarely within Rule 11. The other actions mentioned in DuPont's motion are separable, relatively minor, and also sanctionable under the Rules.

imposition of sanctions." Cruz v. Savage, 896 F.2d 626, 631–32 (1st Cir. 1990). "Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so." Id. at 632. To be vexatious, the attorney's conduct must "be more severe than mere negligence, inadvertence, or incompetence." Id; McLane, Graf, Raulerson & Middleston, P.A. v. Rechberger, 280 F.3d 26, 44 (1st Cir. 2002). Thus, sanctions are available under § 1927 "only when [the attorney's conduct] displays a serious and studied disregard for the orderly process of justice." Rosello-Gonzalez v. Acevedo-Vila, 483 F.3d 1, 7 (1st Cir. 2007) (internal quotation marks omitted).

The party requesting § 1927 sanctions bears the burden to show that an attorney's conduct was "more severe than mere negligence, inadvertence, or incompetence."[9] The filing of a motion under § 1927 does not shift the burden to the other party to justify its behavior. Moreover, in this context, a lawyer's conduct must be evaluated without the benefit of hindsight. See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421–22 (1978) ("[I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.").[10]

---

[9] See United States ex rel. J. Cooper & Assoc., Inc. v. Bernard Hodes Group, Inc., 422 F. Supp. 2d 225, 237 n.16 (D.D.C. 2006) ("The party moving for sanctions [under § 1927] bears the burden of showing that opposing counsel acted recklessly."); Walker v. City of Bogalusa, 1997 WL 736695, at *3 (E.D. La. Nov. 25, 1997) ("The burden is on the moving party to establish with convincing clarity that . . . the litigation was patently meritless.") (internal quotation marks omitted); Asia Strategic Inv. Alliances, Ltd. v. Gen'l Elec. Capital Servs., 1997 WL 2'77309, at *2 (D. Kan. May 15, 1997) ("As the moving parties, defendants bear the burden to show that counsel for plaintiff violated 28 U.S.C. § 1927.").

[10] Although Christiansburg Garment Co. addressed a discretionary award of attorney fees
*(continued on next page)*

Unlike the inherent power, the Supreme Court and the First Circuit have not instructed that § 1927 can only be used when the Rules do not cover the conduct. Thus, the failure to invoke the Rules when they are available does not wholly preclude consideration of § 1927 sanctions. See Northwest Bypass Group v. U.S. Army Corps of Engineers, __ F. Supp. 2d __, 2008 WL 1843889, at *5 (D.N.H. Apr. 22, 2008) (Woodcock, J.). But given the specificity of the Rules along with their embedded policy concerns (of which fairness and notice are two), such a failure surely must inform exercise of the court's discretion[11] under § 1927.[12]

---

under Title VII for the filing of a legal action found to be "unreasonable, frivolous, meritless or vexatious," 434 U.S. at 422, the rationale for avoiding "*post hoc* reasoning" applies in the context of § 1927 as well.

[11] In using the verb "may," the statute is explicitly discretionary. See e.g., Corley v. Rosewood Care Ctr., 388 F.3d 990, 1014 (7th Cir. 2004); Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986); Warren v. Reserve Fund, Inc., 728 F.2d 741, 748 (5th Cir. 1984).

[12] The Advisory Committee Notes state: "Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927." Advisory Committee's Notes on 1993 Amendments to Fed. R. Civ. P. 11. This statement from the Advisory Committee reveals clearly that the 1993 Amendment to Rule 11 was not intended to affect the scope of the court's authority under § 1927; however, it does not address how the court should exercise its discretion when a party files a motion under § 1927 against conduct that it could have challenged under the Rules.

The relationship between § 1927 and the Rules (particularly Rule 11) is important, especially if § 1927 is used to "sidestep" the safe harbor protections of Rule 11. See e.g., Danielle Kie Hart, And the Chill Goes On—Federal Civil Rights Plaintiffs Beware: Rule 11 Vis-à-Vis 28 U.S.C. § 1927 and the Court's Inherent Power, 37 Loy. L.A. L. Rev. 645, 649, 684 (2004) (arguing that reliance on § 1927 as a substitute for Rule 11 "will increase the chilling effects experienced by civil rights plaintiffs in the federal courts" and that "there are strong policy arguments that using 28 U.S.C. § 1927 or the court's inherent power . . . to sidestep Rule 11's procedural requirements *should be improper*") (emphasis in original). A number of courts have expressed concern, therefore, with relying on § 1927 to sanction conduct fully addressed within the Rules. In Chatham Partners v. Fidelity and Deposit Co. of Maryland, Judge Martin stated in dictum that, "given the policy considerations that gave rise to the adoption of Rule 11's safe harbor provision, it seems inappropriate to use 28 U.S.C. § 1927 to do what the Court cannot do under Rule 11" (namely, award attorney fees for a frivolous filing even though no Rule 11 notice was served). See 2001 WL 1262960, at *2 (S.D.N.Y. 2001) (attorney fees were awarded
*(continued on next page)*

9

I address each of the categories of vexatious multiplication that DuPont has challenged.

### *(A) The Claims and Pleadings*

Berman & Simmons was not counsel to NES at the time of the original Complaint and the First Amended Complaint. As a result, no sanctions are available against them for those documents.

DuPont's attack on Berman & Simmons for filing the Second Amended Complaint (and thereafter pursuing those claims) has three fronts. First, DuPont asserts that it "added little more than cosmetic changes to the original Complaint and forced the Defendants to incur unnecessary costs in filing amended and supplemental responses . . . ." Mem. of Law in Support of DuPont's Mot. for Att'y Fees, at 7 (Docket Item 220). But I decline to award sanctions on that basis, since the presiding district judge approved and allowed the amendment. See Order Granting Pl.'s Mot. for Leave to File Second Am. Compl., at 2 (Docket Item 64) ("because this case is at an early stage of

---

under § 1927 even though a Rule 11 motion was never filed, because Judge Martin concluded that Rule 11 sanctions were not available for filing an unwarranted order to show cause that did not permit the 21-day safe harbor notice under Rule 11); see also Malbrough v. Kilpatrick & Stockton, LLC., 1999 WL 643663 (E.D. La. Aug. 23, 1999); Bellistri v. United States, 1998 WL 337884 (S.D.N.Y. June 25, 1998) ("to award § 1927 sanctions in the context of this case would undermine the safe harbor provision of Rule 11 by essentially reading it out of the Rule"). The Ninth Circuit held that § 1927 is not appropriate for discovery abuses that may be sanctioned under Rule 26(g) or 37. See In re Yagman, 796 F.2d 1165, 1187 (9th Cir. 1986), as amended, 803 F.2d 1085 (reserving "damages under section 1927" to "where there is no obvious violation of the technical rules, but where, within the rules, the proceeding is conducted in bad faith for the purpose of delay or increasing costs"); Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 23(B)(3)(a) (2008) ("Section 1927 is generally considered an inappropriate tool for remedying discovery abuse that is subject to sanction under Rule 26(g) or Rule 37.").
   Here, I recognize that I have discretionary authority under § 1927, but I consider DuPont's failure to use the Rules in the exercise of that discretionary authority.

10

litigation . . . leave to file a Second Amended Complaint will not cause undue delay or prejudice to the Defendants.").

Second, DuPont contends that the Second Amended Complaint contained an excessive number of counts. Although defeated in resisting the motion to amend, DuPont could have challenged the Second Amended Complaint with a motion to strike under Rule 12(f) or with a motion under Rule 11. The former, if successful, could have reduced the number of counts. The latter would have put NES's lawyers on notice that DuPont was seeking sanctions and allowed them to withdraw or revise the pleading.[13] I decline to award sanctions on that basis.

Finally, DuPont says that many of NES's claims were baseless: the "contract claims and associated claims based on DuPont's alleged statements of trust and loyalty were frivolous," and "the tort claims . . . had no basis in law or fact." Mem. of Law in Support of DuPont's Mot. for Att'y Fees, at 3–5. Beyond challenging the filing of these claims, DuPont argues that Berman & Simmons continued "to prosecute the claims when it was objectively clear that the arguments were unsupported by any admissible evidence." See Reply of the Def. DuPont, at 2 (Docket Item 272). Whether framed against the claim itself or the continuing duty not to pursue claims shown to be untenable, these allegations also fall squarely within the scope of Rule 11.

---

[13] DuPont contends that it gave NES and its lawyers ample notice throughout the litigation that its claims lacked factual or legal support. But it has pointed me to nothing in its earlier filings that reveals that it then perceived NES's claims or actions to be sanctionable, frivolous, vexatious, or unreasonable.

Moreover, under § 1927, DuPont has failed to show that Berman & Simmons behaved vexatiously and unreasonably, based upon what they knew or should have known *at the time*. See McMahan v. Toto, 256 F.3d 1120, 1129 (11th Cir. 2001), amended on reh'g, 311 F.3d 1077 ("Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case."). The only evidence DuPont submitted of what NES's lawyers knew or should have known when they filed their pleadings (or failed to withdraw them) is the language of an agreement between DuPont and NES.[14] That language provided in substance that DuPont had the right to terminate NES upon thirty days notice, that no damages were available for termination, and that no amendments to the contract could be made except in writing. But as Judge Singal noted, that last provision, which is critical to the viability of the termination provisions, could be overcome by evidence of oral alterations that "leave[s] no doubt of the intention of the parties" or a course of dealing that "explicitly address[es] the contract provision." See Order on Mots. for Summ. J., 517 F. Supp. 2d at 484 (internal quotation marks omitted). DuPont has not shown that Berman & Simmons had (or should have acquired) information

---

[14] In regard to NES's claim under the Maine Unfair Sales Act, DuPont argues that "it is clear NES conducted insufficient legal research" because controlling Maine Law Court precedent revealed that such a claim does not apply to manufacturers. DuPont's Mot. for Att'y Fees at 5. NES voluntarily withdrew this count during the summary judgment practice (along with its claim under the Maine Antitrust Statute). Attorney Robitzek says that the decision to withdraw the Maine Unfair Sales Act claim was based on discovery that "showed that the claim, though viable, essentially boiled down to one below-cost sale . . . . Thus, we made a strategic decision at the summary judgment phase [that the claim] was not worth pursuing." Aff. of William D. Robitzek, ¶¶ 66–67, attached to Opp'n to Mot. for Att'y Fees (Docket Item 266) ("Robitzek Aff."). Certainly Rule 11 was available long ago for DuPont to make its assertion against the validity of NES's claim. DuPont also has not shown how this conduct meets the standard for § 1927 sanctions, particularly in light of Attorney Robitzek's explanation and the voluntary withdrawal of the claim that simplified the summary judgment proceedings.

from its client that should have stopped its efforts to pursue the argument that the agreement had been amended in a way that would avoid the termination provisions.

Four of NES's liability counts survived summary judgment (but limited to the acquisition of NES's customer lists or communication with NES's customers by DuPont and Parksite).[15] As to those, therefore, it cannot be said that NES's claims and arguments "were unsupported by any admissible evidence" on the question of liability. After summary judgment, Judge Singal, on a motion in limine by the defendants, concluded that NES's evidence of "lost profits and loss of the value of the company due to lost DuPont sales, while relevant to any claims of unlawful termination of the distribution agreements, is simply not relevant to the claims that remain in this case." See Order on Mot. in Limine, 2007 WL 4287577, at *1. Judge Singal did not say that there were no damages resulting from the remaining claims, but rather that NES had not produced evidence of damages relevant to those claims. See id. The pursuit of those claims without any relevant evidence of damages might have justified a Rule 11 motion, putting NES on notice and allowing it to withdraw the claims voluntarily.[16] But in the absence of such a Rule 11 motion, I find that resisting the defendants' motion in limine after summary judgment did not met the § 1927 standard of a "serious and studied disregard for the orderly

---

[15] Count VI—Fraud and Misrepresentation, Count VII—Negligent Misrepresentation, Count XII—Breach of Covenant of Good Faith and Fair Dealing, and Count XIII—Tortious Interference with Contractual Rights and Prospective Economic Interests.

[16] Berman & Simmons says that there was evidence of damages beyond the expert testimony that DuPont successfully excluded, Opp'n to DuPont's Mot. for Att'y Fees, at 5 n. 5; Robitzek Aff. ¶ 46, but does not explain why it did not make this argument to Judge Singal.

13

process of justice." Rosello-Gonzales, 483 F.3d at 7. The damages theory was tenuous, but not vexatious.

Beyond filing the Second Amended Complaint, it is not clear that Berman & Simmons filed any other pleadings against DuPont that fit § 1927's subject matter of "multiply[ing] the proceedings." See e.g., Rosello-Gonzalez, 483 F.3d at 7 (listing as examples of § 1927 misconduct, "duplicative motions being filed or repeated refusals to comply with court orders"). They did resist the defendants' motion to dismiss, and in that they were partially successful; they did resist the defendants' motion for summary judgment and again they were partially successful; they did resist the final motion in limine to exclude their evidence of damages, and there they failed. Although at the end of the day, they lost the case, that alone hardly shows a pattern of vexatious behavior.

DuPont also criticizes NES's claims against Parksite, which required DuPont to incur the costs of two sets of counsel because of its prior agreement to indemnify Parksite. NES's claims against Parksite (breach of fiduciary duty, tortious interference with contract, and misappropriation of confidential information) focused on Parksite's leadership position in the G-19. The tortious interference claim survived summary judgment. Judge Singal granted summary judgment on the fiduciary duty claim because NES could not show that a fiduciary relationship existed with Parksite, although Parksite had occupied a position of leadership in the G-19, a group to which NES belonged and that negotiated against DuPont. See id. at 489–90. NES's claim of misappropriation of confidential information failed because NES could not

14

show that it took the necessary steps to protect its customer lists. See id. at 495–96. DuPont provides no evidence or explanation for why these claims against Parksite were unreasonable or vexatious when made or when advocated, other than NES's ultimate inability to develop sufficient evidence during discovery to resist summary judgment.

### (B) Discovery Abuse

DuPont claims that NES refused to narrow its discovery request or even engage in a discovery conference, thereby requiring DuPont to produce approximately 300,000 pages unnecessarily, all of which failed to provide evidence to support NES's claims. However, DuPont's lawyers proceeded to produce the requested documents rather than seek the court's assistance under Federal Rules 26 and 37 and Local Rule 26, or exercise their option of refusing to comply with a burdensome request and obligating NES to invoke the court's assistance and thereby the possibility of sanctions in either direction. DuPont never mentioned or implied any belief that NES's lawyers were violating the discovery rules and never filed a motion pursuant to Local Rule 26 (for resolving discovery disputes). The lawyers in fact held a "lengthy telephone conference" during which Attorney Robitzek agreed to narrow some of the discovery requests. See Robitzek Aff. ¶ 43. DuPont has failed to show why it did not utilize the Rules to narrow the scope of discovery or how these actions by Berman & Simmons were vexatious.

DuPont also requests its attorney fees for having to sort through an NES-produced hard drive so as to avoid seeing so-called G-19 documents, which

15

were subject to a confidentiality agreement. But DuPont provides no evidence from which to conclude that producing the hard drive in this form, assuming NES had the obligation to segregate the G-19 documents, was "more severe than mere negligence, inadvertence, or incompetence," the standard for § 1927 sanctions. See Cruz, 896 F.2d at 632.[17]

### (C) Other Allegedly Vexatious Conduct

On April 26, 2007, NES filed a motion for sanctions against DuPont that challenged DuPont's initial motion in limine requesting exclusion of NES's damages testimony as frivolous. NES argued that DuPont's motion in limine was really a second motion for summary judgment and violated the applicable Scheduling Order, the Local Rules, and the Court's prior orders. (DuPont had used the term "summary judgment" in its motion in limine and conceded that its approach was "unartful," see Def. DuPont's Opp'n to Pl.'s Mot. for Sanctions, at 3–4 (Docket Item 134)) Judge Singal denied NES's motion for sanctions without explanation. But DuPont fails to explain why it did not invoke Rule 11 against NES's motion for sanctions or how NES's sanctions motion meets the standard for § 1927 sanctions. From an objective perspective, NES's attempt to avoid DuPont's motion in limine as an improper motion for summary judgment was a reasonable tactical choice.

---

[17] Attorney Wyman states, "Mr. Robitzek's firm was unwilling to sort out which of the NES computer files contained G-19 documents." Aff. of John C. Wyman in Support of Mot. for Att'y Fees, ¶ 20 (Docket Item 221) ("Wyman Aff."). From this statement, it is not clear whether the plaintiff's law firm simply produced the hard drive or whether it also refused a specific request from Attorney Wyman to remove the confidential documents.

16

DuPont also requests a § 1927 award of attorney fees on the ground that NES violated Local Rule 56(c) by "add[ing] additional facts and argument to many of its responses" in its opposing statement of material facts. Wyman Aff. ¶ 23. NES, like many litigants in this District, included gratuitous legal commentary in its opposing statement of material facts. Those extraneous statements by NES should not have multiplied the litigation for DuPont. Local Rule 56(d) required DuPont to limit its reply to "additional facts submitted by the opposing party." That DuPont chose to respond to the other statements by NES as well does not justify § 1927 sanctions.

## CONCLUSION

This was a complicated and hard-fought case. NES and its lawyers succeeded partially and periodically in resisting the defendants' various attempts to be rid of them, but ultimately, the defendants won completely. It is perfectly understandable that DuPont should be upset at the breathtaking amount it has chosen to pay its lawyers to bring the matter to a successful conclusion, an amount that does not even include the costs of a trial. In some countries, DuPont's victory would allow it to recover some portion of those fees and disbursements against NES, but not under United States law. Under existing law, none of the allegations of misconduct that DuPont recites in its motion for attorney fees, either individually or collectively, justifies an attorney fees award at the end of the case against NES's lawyers under § 1927, or against the lawyers or NES itself under the court's inherent power. DuPont's motion for attorney fees is therefore **DENIED**.

17

**SO ORDERED.**

**DATED THIS 3RD DAY OF JUNE, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**